**CAPLIN &DRYSDALE, CHARTERED**
Jeffrey A. Liesemer
Kevin M. Davis
Lucas H. Self (*pro hac vice pending*)
Alec G. Schwartz
1200 New Hampshire Ave. NW, 8th Floor
Washington, DC 20036
Telephone: (202) 862-5000
Facsimile: (202) 429-3301
jliesemer@capdale.com
kdavis@capdale.com
lself@capdale.com
ascwartz@capdale.com
*Counsel to ACP Agency LLC and*
*Acme Credit Partners LLC*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SYNERGY REORG, LLC, *et al.*, | ) | Case Nos. 26-464-ELG |
| | ) | 26-465-ELG |
| Debtors.[1] | ) | 26-466-ELG |
| | ) | 26-467-ELG |
| | ) | 26-468-ELG |
| | ) | 26-469-ELG |
| | ) | (Joint Administration Pending) |

**OBJECTION OF ACP AGENCY, LLC AND ACME CREDIT PARTNERS, LLC**
**TO DEBTORS' MOTION FOR LEAVE TO USE CASH COLLATERAL**

ACP Agency LLC and Acme Credit Partners LLC (collectively, "**ACP**"), by and through its undersigned counsel, hereby objects to the *Motion for Leave to Use Cash Collateral*, dated

[1] The debtors in these cases are Synergy Reorg, LLC.; Synergy CHC Corp.; Synergy CHC Inc.; Hand MD Corp.; Synergy CHC Mexico; and NomadChoice Pty, Ltd. (collectively, the "**Debtors**").

September 7, 2026 (Dkt. No. 9) ("**Cash Collateral Motion**").[2] The grounds supporting this objection are as follows.

## PRELIMINARY STATEMENT

The bankruptcies of these hopelessly insolvent Debtors have been filed for no other purpose than to frustrate the rights of the Debtors' secured lender and other creditors, while attempting to insulate the Debtors' CEO, Jack Ross, from scrutiny and likely litigation. ACP has a claim of approximately $19 million secured by liens on all or substantially all of the Debtors' assets, which the Debtors represent to be worth approximately $3 million. The Debtors admit that they have neither any hope nor plan to reorganize and seek only to use ACP's cash collateral to pay professionals to liquidate inventory and accounts receivable that are also ACP's collateral. This is not a proper use of cash collateral. What is more, the Debtors have not offered and appear wholly unable to offer adequate protection to ACP, as the Bankruptcy Code requires. Their purported adequate protection—"future proceeds of the sale of pre-petition inventory," (Cash Collateral Motion at 2)—is wholly illusory and inadequate.

The lack of merit in the Debtors' position is made apparent by the Cash Collateral Motion itself. Instead of offering any meaningful argument on the merits, the Debtors spend the majority of the bare-bones motion casting unfounded (and evidence-free) aspersions at ACP for doing nothing more than (finally) exercising its contractual rights after numerous events of default and misleading statements and conduct by the Debtors and Mr. Ross. These accusations of improper conduct have no basis in law or fact.

---

[2] Unless otherwise noted, "Dkt. No." refers to the docket in the lead case, *In re Synergy Reorg, LLC*, 26-464-ELG.

For the reasons explained below, the Debtors have failed to carry their burden on their Cash Collateral Motion. What they have presented is a plan for using ACP's collateral (without the requisite adequate protection) to pay professionals to ultimately reduce creditor recoveries. The Court should deny the Cash Collateral Motion.

## FACTUAL BACKGROUND

ACP incorporates by reference the factual background set forth in its concurrently filed *Objection to the Debtor's Motion to Approve Compromise with Jack Ross*. On May 30, 2025, Debtor Synergy CHC Corp. ("**Synergy**"), the ultimate parent of all the Debtors, as borrower, entered into a $17.5 million senior secured term facility ("**Credit Agreement**") with ACP Agency LLC ("**ACP**") as lender, which is guaranteed by Debtors Synergy CHC Inc. and Hand MD Corp. (together with Synergy, the "**Loan Parties**").[3] This loan is secured by liens on all or substantially all the assets of the Loan Parties. The full amount of the $17.5 million was advanced to Synergy (and outstanding) by December 31, 2025.

After numerous events of default by the relevant Debtors (and waivers and forbearances by ACP), ACP formally gave notice of default and terminated the Forbearance Agreement.[4] On August 18, 2026, ACP informed Synergy that it had notified Banc of California that ACP was shifting control over Synergy's primary bank account at Banc under its deposit account control

[3] Term Loan Credit Agreement, dated as of May 30, 2025, among Synergy CHC Corp., as Borrower, the Guarantors party thereto, ACME Credit Partners Fund I, LP, as Lender, and ACP Agency, LLC, as Administrative Agent and Collateral Agent (together with any amendments, joinders, and modifications, the "Credit Agreement"), attached as Ex. 1 to the Declaration of Peter Eschmann (the "**Declaration**" or "**Decl.**"); Joinder Agreement, dated as of June 9, 2025, by and among the Borrower, Synergy CHC Inc., ACP Agency, LLC and Hand MD Corp., a Delaware corporation, as Additional Guarantor, as amended and restated, Decl. Ex. 2. Capitalized terms not otherwise defined have the meaning ascribed to them in the Declaration.

[4] Notice of Forbearance Termination Event, dated August 11, 2026, from ACP Agency, LLC to Synergy CHC Corp. (Attn: Jack Ross), Decl. Ex. 24.

agreement ("**DACA**") and asked for read-only access to the bank account, as required by the DACA.[5] It was never provided.

ACP issued a Notice of Acceleration on August 25, 2026, terminating all commitments and declaring Synergy's obligations immediately due and payable.[6] As of August 21, 2026, $18,898,424.70 remained outstanding and payable to ACP under the Credit Agreement.[7]

Without any prior notice to ACP, the Debtors filed for bankruptcy on September 4, 2026. Dkt. No. 1. Until the Debtors filed for bankruptcy, ACP had been unaware of the existence of Synergy Reorg, LLC ("**Synergy Reorg**"). On information and belief, Synergy Reorg was formed just days prior to the chapter 11 filings, on August 28, 2026, has never generated any revenue, has no employees, and has no books or records. Its sole asset consists of approximately $200,000 in accounts receivable assigned to it days before the petition. *See* Dkt. No. 1 at 8. Synergy Reorg purportedly provides the Debtors with the sole basis for venue in the District of Columbia under 28 U.S.C. § 1408(1). Scheduled assets across all six debtors show assets totaling $3.87 million.[8]

By their own admission, the Debtors do not seek to reorganize but instead "look to chapter 11 as an efficient mechanism to liquidate in an orderly fashion." Cash Collateral Motion at 2. As

---

5 Emails, P. Eschmann to J. Fickett, copying A. Galan, subject "DACA," August 18, 2026, 4:12 p.m. ET; T. MacDonald to P. Eschmann, copying J. Fickett, J. Ross and A. Galan, subject "Re: DACA," August 19, 2026, 8:56 a.m. and 8:57 a.m. ET, each marked "WITHOUT PREJUDICE"; P. Eschmann to T. MacDonald, August 19, 2026, 9:16 a.m. ET; T. MacDonald to P. Eschmann, August 19, 2026, 9:33 a.m. ET, Decl. Ex. 27; Deposit Account Control Agreement, dated as of June 5, 2025, § 10., Decl. Ex. 12.

6 Notice of Acceleration, dated August 25, 2026, from ACP Agency, LLC to Synergy CHC Corp., Synergy CHC Inc. and Hand MD Corp. (Attn: Jack Ross), Decl. Ex. 28 at 1–2.

7 Synergy CHC Corp., Current Report on Form 8-K (Aug. 26, 2026), Item 2.04 (signed by Jack Ross, Chief Executive Officer), Decl. Ex. 29.

8 *See* Petition (Case No. 26-464) (listing total assets of $204,267); Petition (Case No. 26-465) (listing total assets of $2,451,505); Petition (Case No. 26-466) (listing total assets of $1,175,573); Petition (Case No. 26-467) (listing total assets of $0); Petition (Case No. 26-468) (listing total assets of $723); Petition (Case No. 26-469) (listing total assets of $40,132).

part of the Cash Collateral Motion, the Debtors provided a 13-week budget that purports to show how such "orderly" liquidation will be implemented and paid for. But that budget actually shows that the Debtors' intended use of cash collateral would benefit no one other than professionals and Mr. Ross. The budget estimates total receipts over the 13-week forecast of $538,868 with operating expenses of $318,137 and debtor professional fees of $284,476, resulting in an operating ***deficit*** of $63,745. Dkt. No. 9-3. This budget appears to include the $100,000 the Debtors would receive under the Settlement Motion (which ACP is also objecting to). Thus, this bankruptcy is intended to do nothing more than consume ACP's collateral to pay professionals and extinguish claims against the Debtors' CEO (at an eye-watering discount). Given the Debtors' own admissions and the reality of the budget, the Debtors will be left with no option but to convert the cases to chapter 7 at that point (importantly at which time, if the Debtors have their way, Mr. Ross will have received his illegitimate release). The cases should be converted now.

## OBJECTION

### I. Legal Standard

The Bankruptcy Code prohibits the use of cash collateral by a debtor in possession absent consent of the secured creditor or Court authorization. 11 U.S.C. § 363(c)(2)(A)-(B). The Bankruptcy Code defines "cash collateral" as, *inter alia*, "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property . . . whether existing before or after the commencement of a case under this title." *Id.* § 363(a).

"On the request of an entity that has an interest in property," the Court "shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." *Id.* § 363(e). Thus, adequate protection for ACP is *mandatory* here. *See, e.g.*, *Metromedia Fiber*

*Network Servs. v. Lexent, Inc. (In re Metromedia Fiber Network, Inc.)*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary—it states that the court 'shall' grant the relief specified, at any time, on request of the secured entity."); 3 Collier on Bankruptcy ¶ 363.05 (16th ed. 2026) ("[T]he requirement of adequate protection in section 363(e) is mandatory.").

"Section 361 sets forth three nonexclusive methods by which adequate protection may be afforded to a creditor." *In re Blehm Land & Cattle Co.*, 859 F.2d 137, 139 (10th Cir. 1988). These include (1) "requiring the trustee to make a cash payment or periodic cash payments to the creditor to offset any decrease in the value of the creditor's interest in its collateral," (2) "providing to such entity an additional or replacement lien occasioned by the automatic stay or use, sale or lease of the collateral other than in the ordinary course of business," and (3) "granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361. The Debtors are not proposing to afford adequate protection to ACP in exchange for using ACP's cash collateral. Accordingly, the Cash Collateral Motion must be denied.

## II. ACP Has Valid and Perfected Liens

The Debtors do not dispute that ACP has valid liens on the cash collateral. Cash Collateral Motion at 2 ("ACP Agency, LLC . . . holds a prepetition lien . . . the Debtors suggest to encumber seemingly all lienable assets of Synergy CHC Corp."); *id*. at 3 ("ACP does hold a lien that seems to encumber the Debtors' inventory."); *id*. at 6 (citing Nevada UCC record for ACP covering "[a]ll assets of the debtor of every kind and nature, whether now owned or hereafter acquired and

wherever located, and all proceeds and products thereof").[9] Moreover, UCC filings establish that ACP has perfected such liens.[10]

**III. The Debtors' Proposed Adequate Protection Is Not Adequate at All**

Given ACP's liens on the relevant cash collateral, the Debtors must show that they are affording ACP adequate protection in order for the Court to permit the use of the cash collateral. *In re Young*, 193 B.R. 620, 625 (Bankr. D.D.C. 1996) ("The burden is on the trustee, when the issue is raised, to prove adequate protection."). This they have not done and cannot do.

The "adequate protection" that the Debtors propose—"future proceeds of the sale of pre-petition inventory"—is illusory. ACP already holds liens on that inventory and such liens automatically "attach[] to any identifiable proceeds of collateral." UCC § 9-315(a)(2). And such perfected liens attach to the proceeds of collateral notwithstanding the automatic stay. *See* 11 U.S.C. §552(b)(1); *see also In re Timothy Dean Rest. & Bar*, 342 B.R. 1, 23 (Bankr. D.D.C. 2006) (explaining "that if a security interest in property extends to proceeds" of encumbered property, "then the security interest is effective against the proceeds" during the bankruptcy to the extent provided under non-bankruptcy law). The Debtors thus offer ACP nothing more than liens on property on which ACP *already* has liens. This does not and cannot suffice as adequate protection against the further deterioration of ACP's collateral. *See, e.g.*, *In re Hari Ram, Inc.*, 507 B.R. 114, 125 (Bankr. M.D. Pa. 2014) (noting that an offer of a replacement lien "is meaningless because

---

[9] The Debtors insinuate that because ACP had exercised its rights under account control agreements against some of the Debtors' bank accounts prepetition it has failed to perfect its lien as to other bank accounts. *See* Cash Collateral Motion at 6. This is not so. The Debtors' citation to Nev. Rev. Stat. § 104.9314 is not to the contrary. That statute merely states that a "[a] security interest in controllable accounts . . . *may be perfected* by control of the collateral." Nev. Rev. Stat. § 104.9314(1) (emphasis added). It does not state that control is the *exclusive* means of perfection.

[10] Decl. Exs. 3-11.

the creditor already has a lien on these assets") (citing *In re Buttermilk Towne Center, LLC,* 442 B.R. 558, 566 (6th Cir. BAP 2010)). The Cash Collateral Motion must therefore be denied.

## IV. The Debtors Have No Hope or Desire for Reorganization

"In addition to reviewing the debtor's adequate protection proposal, the court should consider whether there is any reasonable chance of reorganization. If a debtor is engaged in an obviously futile attempt to reorganize, it should not be permitted to jeopardize a creditor's cash collateral." *Id*. The Debtors admit that they plan to liquidate rather than reorganize, so there is no basis on which to jeopardize ACP's cash collateral. What is more, even in liquidation, and even after adding a $100,000 receivable on account of the proposed (and improper) settlement with the Debtors' CEO, the Debtors propose operating at a loss under their budget. *See* Dkt. 9-3. In fact, most of the proceeds from the liquidation are expected to come in by week 8, yet the Debtors propose a 13-week budget that will continue to burn estate resources long after recoveries have slowed or ceased. *Id.* Thus, the use of cash collateral here would not benefit the estate but rather benefit insiders and professionals at the expense of a party that already has a validly protected lien. "Adequate protection payments are generally designed to guard against depreciation of property." *In re DeFranco*, 93 B.R. 307, 309 (Bankr. D.D.C. 1988). But here, the Debtors admit that they intend to use the cash collateral in a way that will erode the value of ACP's security interest without any benefit or protection to ACP.

## V. Accusations that ACP Is Violating the Automatic Stay Are Irrelevant and Unsupported

In the Cash Collateral Motion, the Debtors accuse ACP of violating the automatic stay. These accusations are irrelevant to the Cash Collateral Motion, but ACP would be remiss not to address how these accusations lack foundation.

The Debtors claim that ACP's failure to release its freeze on the Debtors' bank accounts upon the mere notice of bankruptcy somehow constitutes a "willful violation of the automatic stay." Cash Collateral Motion at 3. The Supreme Court says otherwise. In *City of Chicago, Illinois v. Fulton*, 592 U.S. 154 (2021), the Court was asked "whether an entity that retains possession of the property of a bankruptcy estate violates § 362(a)(3)." *Id.* at 157. It concluded that "mere retention of estate property after the filing of a bankruptcy petition does not violate" the automatic stay. *Id.* at 161-62. The automatic stay merely "prohibits affirmative acts that would disturb the status quo of estate property as of the time when the bankruptcy petition was filed." *Id.* at 158.

In accordance with the DACA, Banc of California has not complied with the Debtors' instructions regarding its account since August 19, 2026[11]— 16 days ***before*** the Debtors filed their chapter 11 petitions. This is the only "freeze" that ACP has caused to the Debtors accounts, and it occurred before the automatic stay was in effect; its continuation is merely the maintenance of the prepetition "status quo." *Fulton* 592 U.S. at 158.

The Debtors do not (nor could they) accuse ACP of taking any postpetition acts in violation of the automatic stay. The Debtors' accusations not only are gratuitous; they are without merit.[12] [13]

---

[11] In accordance with ¶ 3 of the DACA, this is two business days after the Shifting Control Notice was issued on August 17, 2026. *See* Decl. Ex. 12 at 1 & ¶ 3.

[12] If a debtor believes it has an interest in property held by another at the time of the petition, it must seek turnover of that property under 11 U.S.C. § 542. But "unlike the automatic stay of 11 U.S.C. § 362(a), [§ 542(a)] is not self-executing." *In re Pilate*, 488 B.R. 500, 501 (Bankr. D.D.C. 2013). As the Debtor acknowledges, it has no control over the bank accounts because they "remain frozen." Cash Collateral Motion at 3. And thus an adversary proceeding under § 542(a), at which they would have to show adequate protection, not elicitation of the automatic stay, is the appropriate recourse.

[13] Furthermore, ACP did not, as the Debtors suggest, do anything improper, let alone tortious, in contacting customers and requesting they remit receivables to the DACA account. ACP's actions were specifically contemplated and permitted under the Credit Agreement. What is more, ACP took these actions only after learning that Mr. Ross was contacting customers who historically

**RESERVATION OF RIGHTS**

ACP expressly reserves the right to supplement or amend this objection based on its ongoing investigation and review of documents.

**CONCLUSION**

The Debtors have proposed a use of cash collateral that will not benefit the estate; rather, it will pay for a release of an insider and professional fees while the Debtors liquidate property that should be turned over to ACP. The Debtors' proposed adequate protection is insufficient and their use of liened cash would cannibalize property encumbered by ACP's liens. For these reasons, the Court should deny the Cash Collateral Motion.

Dated: September 9, 2026

Respectfully submitted,

**CAPLIN & DRYSDALE, CHARTERED**

*/s/ Kevin M. Davis*

Jeffrey A. Liesemer
Kevin M. Davis
Lucas H. Self (*pro hac vice* pending)
Alec G. Schwartz
1200 New Hampshire Ave NW, 8th Floor
Washington, DC 20036
Telephone: (202) 862-5000
Facsimile: (202) 429-3301
jliesemer@capdale.com
kdavis@capdale.com
lself@capdale.com
aschwartz@capdale.com

*Counsel to ACP Agency LLC and Acme Credit Partners LLC*

paid receivables to Synergy into the DACA account and instructing them to instead pay into non-DACA accounts to avoid ACP's reach. *See* Decl. ¶¶ 23-24.